IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION |
| v. | ) | |
| | ) | No. 12-20141-18-KHV |
| CHRISTOPER C. CRAIG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On August 28, 2014, the Court sentenced defendant to life in prison. This matter is before the Court on defendant's letter (Doc. #1247) filed November 2, 2023, which the Court construes as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), and defendant's amended Motion For Compassionate Release (Doc. #1249) filed November 27, 2023. On December 15, 2023, pursuant to District of Kansas Standing Order No. 20-8, the Office of the Federal Public Defender notified the Court that it does not intend to enter an appearance to represent defendant. For reasons stated below, the Court overrules defendant's motions.

### Factual Background

The Tenth Circuit Court of Appeals summarized defendant's relevant criminal conduct as follows:

> The overarching conspiracy in which Defendant was involved operated in the Kansas City area and lasted from January 2006 until December 2012. Two men, Gregory Moore and Daniel Bryant, headed the conspiracy with the general purpose of distributing marijuana, cocaine, and cocaine base around the Kansas City metropolitan area. Defendant and others helped allocate these substances at Moore's and Bryant's direction.
>
> After several encounters with law enforcement officers throughout the six years

> the conspiracy operated, defendant's most significant criminal foray came in August 2012 when he organized the attempted robbery of rival drug-dealer Brandon Campbell.  He recruited two cousins, DaRyan Pryor and Arterrius Pryor, to actually commit the robbery.  Defendant drove DaRyan and Arterrius to an apartment complex in south Kansas City, gave them guns and T-shirts to wear as face masks, and remained in the driver's seat of his vehicle and watched while the two men attempted to rob Campbell in the parking lot of the complex.  In the midst of the robbery attempt, Campbell drew his gun and shot DaRyan.  DaRyan later died from his wounds.

United States v. Craig, 808 F.3d 1249, 1251–52 (10th Cir. 2015).

On November 20, 2013, a grand jury returned a 27-count indictment which charged defendant with conspiring to manufacture, to possess with intent to distribute, and to distribute five kilograms or more of cocaine, 280 grams or more of cocaine base and marijuana, and maintaining a drug-involved premises in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 846, 856 (Count 1) and two counts of using a communication facility to facilitate a drug trafficking crime in violation of 21 U.S.C. § 843(d) (Counts 15 and 16).  Second Superseding Indictment (Doc. #439) at 4, 8.  On February 3, 2014, the day trial was scheduled to begin, defendant pled guilty to all three counts without a plea agreement.  Petition To Enter Plea Of Guilty And Order Entering Plea (Doc. #560); Transcript Of Change Of Plea Hearing (Doc. #874) filed November 20, 2014.

After his plea, under 21 U.S.C. § 841(b)(1)(A), defendant faced a statutory minimum of ten years and maximum of life in prison.  When calculating his offense level, the Court applied a murder cross-reference under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(d) for the death of DaRyan Pryor, a leadership role enhancement under U.S.S.G. § 3B1.1(a) and an obstruction of justice enhancement under U.S.S.G. § 3C1.2.  Presentence Investigation Report ("PSIR") (Doc. #777) filed July 11, 2014, ¶¶ 73–86.  The Court found that his final offense level

was 43, for a guideline sentence of life in prison.  Id., ¶ 128.  On August 28, 2014, the Court sentenced defendant to life in prison.

Defendant appealed his sentence and judgment.  On December 22, 2015, the Tenth Circuit affirmed.  See United States v. Craig, 808 F.3d 1249 (10th Cir. 2015).

On October 30, 2017, the Court denied defendant's motion to vacate sentence under 28 U.S.C. § 2255.  Memorandum And Order (Doc. #1039).  The Court later overruled defendant's motion to set aside the order denying relief under Section 2255.  Memorandum And Order (Doc. #1047) filed December 15, 2017.  On March 19, 2018, the Tenth Circuit denied a certificate of appealability and dismissed the appeal.  United States v. Craig, 733 F. App'x 417 (10th Cir. 2018).

Defendant now asks the Court to reduce his sentence under the compassionate release statute because (1) under the current Sentencing Guidelines, he would not be responsible for the murder of his cousin, (2) he suffers from various medical issues, (3) he needs to care for his 21-year-old daughter who is blind, (4) he has shown rehabilitation in prison and (5) he is unlikely to commit another crime.

**Analysis**

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so.  See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).  Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing

range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c). Under the First Step Act of 2018, 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).[1]

The Court may grant compassionate release if defendant establishes that (1) extraordinary and compelling reasons warrant a reduced sentence, (2) a reduced sentence is consistent with applicable Sentencing Commission policy statements and (3) Section 3553(a) factors warrant a reduced sentence. 18 U.S.C. § 3582(c)(1)(A); United States v. Maumau, 993 F.3d 821, 831 (10th Cir. 2021); United States v. McGee, 992 F.3d 1035, 1042–43 (10th Cir. 2021). On November 1, 2023, the Sentencing Commission issued an applicable policy statement for motions for compassionate release filed by defendants. U.S.S.G. § 1B1.13(b), Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement). Under the policy statement, the Sentencing Commission has determined that extraordinary and compelling reasons exist if defendant establishes any one or combination of the following circumstances: (1) he has certain medical conditions; (2) he is at least 65 years old and has experienced a serious deterioration in health; (3) he has family circumstances which require him to act as a caregiver; (4) he was a victim of sexual or physical abuse by or at the direction of a correctional officer or other individual who had custody of him; (5) any other circumstances or combination of circumstances that when considered by themselves or together with any of the first four categories, are similar in gravity to the circumstances described in those four categories; and

---

[1] The Court may entertain requests for compassionate release only upon a motion of the BOP or of defendant after he submits a request to the BOP and the earlier of (1) when he "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The government does not dispute that defendant has exhausted administrative remedies.

range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c). Under the First Step Act of 2018, 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).[1]

The Court may grant compassionate release if defendant establishes that (1) extraordinary and compelling reasons warrant a reduced sentence, (2) a reduced sentence is consistent with applicable Sentencing Commission policy statements and (3) Section 3553(a) factors warrant a reduced sentence. 18 U.S.C. § 3582(c)(1)(A); United States v. Maumau, 993 F.3d 821, 831 (10th Cir. 2021); United States v. McGee, 992 F.3d 1035, 1042–43 (10th Cir. 2021). On November 1, 2023, the Sentencing Commission issued an applicable policy statement for motions for compassionate release filed by defendants. U.S.S.G. § 1B1.13(b), Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement). Under the policy statement, the Sentencing Commission has determined that extraordinary and compelling reasons exist if defendant establishes any one or combination of the following circumstances: (1) he has certain medical conditions; (2) he is at least 65 years old and has experienced a serious deterioration in health; (3) he has family circumstances which require him to act as a caregiver; (4) he was a victim of sexual or physical abuse by or at the direction of a correctional officer or other individual who had custody of him; (5) any other circumstances or combination of circumstances that when considered by themselves or together with any of the first four categories, are similar in gravity to the circumstances described in those four categories; and

---

[1] The Court may entertain requests for compassionate release only upon a motion of the BOP or of defendant after he submits a request to the BOP and the earlier of (1) when he "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The government does not dispute that defendant has exhausted administrative remedies.

(6) a change of law if defendant has served ten years of an unusually long sentence and the change would produce a gross disparity between the sentence being served and the sentence likely to be imposed today.  U.S.S.G. § 1B1.13(b)(1)–(6).

I.      **Extraordinary And Compelling Reasons For A Reduced Sentence**

Defendant asks the Court to reduce his sentence because (1) under the current Guidelines, he would not be responsible for the murder of his cousin, (2) he suffers from various medical issues, (3) he needs to care for his 21-year-old daughter who is blind, (4) he has shown rehabilitation in prison and (5) he is unlikely to commit another crime.

A.  Change In Law

Defendant argues that the Court should reduce his sentence because after Amendment 790 to the Guidelines, a court today would no longer find that he was responsible for the murder of his cousin.  The Court originally sentenced defendant under the 2013 version of the Guidelines, which defined relevant conduct in the case of a "jointly undertaken criminal activity" to include "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."  U.S.S.G. § 1B1.3(a)(1)(B) (2013).  Amendment 790 clarified the "jointly undertaken criminal activity" analysis for relevant conduct purposes.  Even so, the Sentencing Commission did not make Amendment 790 retroactive.  See U.S.S.G. § 1B1.10(d) (Amendment 790 not included in policy statement for motions under 18 U.S.C. § 3582(c)(2)).

A change of law potentially can constitute an extraordinary and compelling reason for a reduced sentence under the policy statement.  U.S.S.G. § 1B1.13(b)(6).  The policy statement specifically excludes, however, a change of law based on "an amendment to the Guidelines

Manual that has not been made retroactive." Id. In addition, the Court cannot consider the impact of a non-retroactive Guidelines amendment under the catchall provision of Section 1B1.13(b)(5). See U.S.S.G. § 1B1.13(c), Limitations on Changes in Law ("Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement.").[2]

Even if the Court could consider the impact of Amendment 790, defendant has not shown that the amendment is an extraordinary and compelling reason for a reduced sentence. Amendment 790 amended Section 1B1.3(a)(1)(B), which sets forth the circumstances when "jointly undertaken criminal activity" can be considered relevant conduct. On direct appeal, however, the Tenth Circuit declined to address whether defendant could be responsible for the attempted robbery of a rival drug dealer under subsection (a)(1)(B), the subsection which Amendment 790 clarified. United States v. Craig, 808 F.3d 1249, 1256 n.6 (10th Cir. 2015). The Tenth Circuit noted that subsection (a)(1)(B) is primarily utilized in circumstances where a defendant otherwise had no connection to the act (here attempted robbery) at issue other than the jointly undertaken criminal activity of which he was a part. Id. Because defendant had such a

---

[2] Defendant also argues that the Court has authority to grant relief under 18 U.S.C. § 3582(c)(2). To obtain relief under Section 3582(c)(2), defendant must overcome three distinct hurdles: (1) under the statute's "based on" clause, defendant must show he was sentenced based on a guideline range the Sentencing Commission lowered after his sentencing; (2) under the statute's "consistent with" clause, defendant must show that his request for a sentence reduction is consistent with the Commission's policy statements and (3) defendant must convince the district court that he is entitled to relief in light of the sentencing factors in Section 3553(a). United States v. C.D., 848 F.3d 1286, 1289–90 (10th Cir. 2017). Under Tenth Circuit precedent, the first hurdle is jurisdictional. Id. at 1289. Because Amendment 790 is not retroactive and did not impact defendant's guideline range, the Court dismisses his request for relief under Section 3582(c)(2).

heavy hand in organizing the commission of the attempted robbery, the Tenth Circuit determined that his conduct fell within subsection (a)(1)(A)—which applies to acts that defendant commits, commands, induces, procures or willfully causes.  Id.  In other words, the attempted robbery was relevant conduct under subsection (a)(1)(A) because defendant himself procured the commission of the robbery as part of the drug-trafficking conspiracy. Id. at 1256–57.  Because the attempted robbery resulted in murder, defendant is accountable for it.  Id. at 1258; see id. at 1256 (as long as attempted robbery occurred during commission of underlying conspiracy, DaRyan Pryor's murder relevant conduct under subsection (3)); U.S.S.G. § 1B1.3(a)(3) (relevant harm includes all harm that resulted from acts and omissions specified in subsections (a)(1) and (a)(2), and all harm that was object of such acts and omissions).  Amendment 790 does not impact subsection (a)(1)(A), which the Tenth Circuit relied on in affirming defendant's sentence. Therefore, defendant has not shown that Amendment 790 is an extraordinary and compelling reason to reduce his sentence.[3]

   B. Medical Circumstances

Defendant argues that his medical issues constitute extraordinary and compelling reasons for release.  Under the policy statement, the medical circumstances of a defendant can provide extraordinary and compelling reasons for a reduced sentence in the following circumstances:

   (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory).  A specific prognosis of life expectancy

---

[3]     Defendant argues that extraordinary and compelling reasons exist because Amendment 790 creates a disparity between the length of his sentence relative to other offenders with similar conduct.  Motion For Compassionate Release (Doc. #1249) at 10, 19–21.  As explained above, defendant has not shown that his sentence would be different under the current version of the Guidelines.  The guideline ranges reflect the relative culpability and criminal history of each defendant.  Defendant has not shown that the length of his sentence relative to the average sentence of similar offenders is an extraordinary and compelling reason for release.

      (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (B) The defendant is--
     (i) suffering from a serious physical or medical condition,
     (ii) suffering from a serious functional or cognitive impairment, or
     (iii) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

  (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

  (D) The defendant presents the following circumstances--
     (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
     (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
     (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. 1B1.13(b)(1).

Defendant contends that his medical issues are similar in nature and consequences to the above circumstances to fall within the catchall provision in the policy statement. *See* U.S.S.G. § 1B1.13(b)(5). Likewise, the Court considers whether defendant has shown that he is experiencing deteriorating physical health that substantially diminishes his ability to provide self-care within the prison environment and is not expected to recover under Section 1B1.13(b)(1)(B)(iii).

Defendant's medical records show that he has a history of obesity, hip pain, arthritis,

hernia surgery and possible bronchitis. The medical records indicate that defendant's hip pain has been in remission since 2022. Defendant asserts that he also suffers from asthma, gout, toe pain and a history of amputations. Defendant does not cite medical records which indicate that he has such conditions and the BOP summary records of defendant's current medical ailments do not include these conditions. Defendant also asserts that he has ongoing issues following his hernia surgery. The medical records reveal that defendant has received multiple evaluations since the repair with no problems. In 2020, however, medical personnel treated defendant for unspecified abdominal pain.

While medical records reveal that defendant suffers from several ailments and possibly more, he has not shown that his deteriorating physical health has substantially diminished his ability to provide self-care within the prison environment. See U.S.S.G. § 1B1.13(b)(1). Defendant also has not established that his medical circumstances are "similar in gravity" to the medical circumstances under Section 1B1.13(b)(1) or the circumstances in subsections (b)(2), (b)(3) or (b)(4). Therefore, the Court finds that relief is not warranted under the catchall provision in the policy statement. See U.S.S.G. § 1B1.13(b)(5).

Defendant also contends that due to his obesity, his race and his respiratory conditions, he is at risk of complications from contracting COVID-19. See Motion For Compassionate Release (Doc. #1249) at 13–14. In November 2020 and February 2022, defendant contracted COVID-19. At age 41, defendant is young. Defendant apparently has several medical ailments, which together may elevate his risk of contracting COVID-19 or suffering severe illness from it. Even so, defendant has received two doses of the COVID-19 vaccine and has refused a third booster vaccine. Apparently, the prevailing scientific view is that vaccinated individuals (even

with medical comorbidities) do not have a significant risk of severe disease or death if they contract COVID-19. Defendant has not shown that his health conditions combined with the risk of contracting COVID-19 constitute extraordinary and compelling reasons for release or a reduced sentence. See United States v. Wirichaga-Landavazo, No. 23-4040, 2023 WL 7166173, at *4 (10th Cir. Oct. 31, 2023) (despite defendant's medical conditions, district court does not abuse discretion finding that sentence reduction not warranted for defendant who received or refused COVID-19 vaccine); United States v. Gunkel, No. 22-5055, 2022 WL 17543489 (10th Cir. Dec. 9, 2022) (despite defendant's medical conditions, district court did not abuse discretion finding that vaccinations prevented "undue risk" of serious COVID-19 case or resulting complications); United States v. McRae, No. 21-4092, 2022 WL 803978, at *2 (10th Cir. Mar. 17, 2022) (when defendant has access to vaccine, incarceration during COVID-19 pandemic does not present extraordinary and compelling reason warranting sentence reduction).

Defendant has not shown that his medical conditions are an extraordinary and compelling reason for a reduced sentence.

C. Care For Defendant's Daughter

Defendant argues that he needs to care for his 21-year-old daughter who is blind. Under the policy statement, defendant can establish extraordinary and compelling reasons for release based on the "death or incapacitation of the caregiver of . . . defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." U.S.S.G. § 1B1.13(b)(3)(A). Defendant notes that it is a hardship on his daughter's current caregiver (his daughter's mother) to care for his daughter and be able to work to provide an adequate income. Defendant has not shown that other family members or friends are unable

to care for his daughter. Because defendant does not assert that his daughter's current caregiver is incapacitated, he has not established extraordinary and compelling reasons for release based on family circumstances. Defendant also has not shown that any financial strain on his daughter's caregiver is "similar in gravity" to the circumstances described in the first four subsections of the policy statement. See U.S.S.G. § 1B1.13(b)(5) (catchall provision).

D. Rehabilitation

Defendant argues that his rehabilitation warrants relief. Rehabilitation alone is not an extraordinary and compelling reason for relief. See 28 U.S.C. § 994(t) (while Sentencing Commission shall issue policy statements on what constitutes reasons for sentence reduction, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason"). Defendant has taken a number of classes and made some progress toward rehabilitation. Even so, defendant's rehabilitation efforts in combination with his other stated reasons do not constitute an extraordinary and compelling reason for relief, and certainly not one of similar gravity to the circumstances identified in the first four categories of the applicable policy statement.

E. Low Risk Of Recidivism

Defendant argues that BOP's assessment that he is a low risk to commit further crimes is an extraordinary and compelling reason for relief. The Court commends defendant for his efforts to reduce the likelihood that he will commit additional crimes. Even so, the applicable Sentencing Commission policy statement does not identify a defendant's risk of recidivism as an extraordinary and compelling reason for relief. Likewise, defendant has not shown that his low risk of recidivism is of similar gravity to the circumstances identified in the first four categories

of the policy statement.

In sum, none of defendant's stated reasons—alone or collectively—are "extraordinary and compelling" within the meaning of the compassionate release statute.

## II.     Section 3553 Factors

Even if defendant could somehow show that his stated grounds for relief collectively constitute "extraordinary and compelling" reasons for a reduced sentence and that such a finding is consistent with the applicable policy statement, the Court would deny relief after considering the factors under 18 U.S.C. § 3553(a).  The Court considers the nature and circumstances of the offense, defendant's personal history and characteristics, the purposes of sentencing including the need to protect the public from further crimes of defendant, any threat to public safety and the need to avoid unwanted sentence disparities among defendants with similar records who are convicted of similar conduct.  See 18 U.S.C. § 3553(a).

Defendant seeks a reduced sentence within the guideline range of 121 to 151 months, which effectively would be a sentence of time served.  A sentence of time served is inconsistent with the seriousness of defendant's offense, defendant's personal history and characteristics, the need for deterrence and the need to protect the public.

Defendant committed a significant drug trafficking offense. As part of the offense conduct, defendant was responsible for 4.325 kilograms of cocaine, was an organizer or leader of criminal activity that involved five or more participants and possessed a firearm.  PSIR (Doc. #777), ¶¶ 76–79.  He also recklessly created a substantial risk of death or serious bodily injury when he attempted to flee from law enforcement officers.  Id., ¶ 81.  Finally, defendant organized the attempted robbery of a rival drug dealer and supplied guns for the crime, which

ultimately resulted in the death of his cousin, DaRyan Pryor. Id., ¶¶ 54–60. At sentencing, the Court determined that defendant was responsible for Pryor's murder and applied the murder cross-reference under the Guidelines. Id., ¶ 75; see U.S.S.G. § 2D1.1(d).

A reduction of defendant's sentence to time served would reflect a significant disparity from his current sentence of life in prison. Defendant has completed more than ten years of his sentence, has had only a few relatively minor disciplinary incidents and made some progress toward rehabilitation. Even so, on balance, the factors under Section 3553(a) do not support a reduced sentence.

In sum, defendant has not shown "extraordinary and compelling" reasons for a reduced sentence, that the applicable policy statement is consistent with a finding of "extraordinary and compelling" reasons or that the factors under Section 3553(a) support a reduced sentence. The Court therefore overrules defendant's motion for compassionate release.

**IT IS THEREFORE ORDERED** that defendant's letter (Doc. #1247) filed November 2, 2023, which the Court construes as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), is **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's amended Motion For Compassionate Release (Doc. #1249) filed November 27, 2023 is **DISMISSED to the extent that defendant seeks relief under 18 U.S.C. § 3582(c)(2) and is otherwise OVERRULED**.

Dated this 1st day of April, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge